FILED
CLERK, U.S. DISTRICT COURT

FEB 1 2 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN DE BOES, | NO. CV 07-5373-DSF(E) |
|       Petitioner, | |
|   v. | REVISED ORDER ADOPTING FINDINGS, |
| D. K. SISTO, Warden, | CONCLUSIONS AND RECOMMENDATIONS |
|       Respondent. | OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge.  With the exception of the first sentence of the paragraph beginning at page 21, line 24 of the Magistrate Judge's Report and Recommendation, the Court approves and adopts the Report and Recommendation.

The recent Ninth Circuit decision in Hayward v. Marshall, 2008 WL 43716 (9th Cir. Jan. 3, 2008) ("Hayward"), issued after the filing of the Report and Recommendation, does not alter the result in the present case.  In Hayward, the Ninth Circuit cited the Biggs dicta and granted habeas relief to a state prisoner who was seeking parole.  In

1   doing so, however, the Hayward Court expressly confined its ruling to

2   the "unusual" and "extraordinary" circumstances of that case.   Hayward

3   at * 8.   Those circumstances, emphasized repeatedly by the Hayward

4   Court, included the significant provocation for the crime (the victim

5   had attacked Hayward's girlfriend) and the Board of Prison Terms'

6   successive, favorable discretionary decisions (the Board twice had

7   found Hayward suitable for parole).   Id.   No such "unusual" or

8   "extraordinary" circumstances attend the present case.

9

10      IT IS ORDERED that Judgment be entered denying and dismissing

11  the Petition with prejudice.

12

13      IT IS FURTHER ORDERED that the Clerk serve copies of this

14  Order, the Magistrate Judge's Report and Recommendation and the

15  Judgment herein by United States mail on Petitioner and counsel for

16  Respondent.

17

18          DATED:   _____February 8_____ , 2008.

19

20                  _____
                         DALE S. FISCHER
21                  UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WARREN DE BOES,                )   NO. CV 07-5373-DSF(E)
                              )
              Petitioner,      )
                              )
     v.                        )   REPORT AND RECOMMENDATION OF
                              )
D. K. SISTO, Warden,           )   UNITED STATES MAGISTRATE JUDGE
                              )
              Respondent.      )
_____)

     This Report and Recommendation is submitted to the Honorable
Dale S. Fischer, United States District Judge, pursuant to 28 U.S.C.
section 636 and General Order 05-07 of the United States District
Court for the Central District of California.

PROCEEDINGS

     Petitioner filed a "Petition for Writ of Habeas Corpus By a
Person in State Custody" on August 16, 2007.  Respondent filed an
Answer on October 18, 2007.  Petitioner filed a Traverse on
December 6, 2007.

1                                    **BACKGROUND**

2

3      In 1975, a jury convicted Petitioner of first degree murder,

4 robbery and burglary (Respondent's Lodgment 1).  The jury found true

5 the allegations that: (1) during the commission of the burglary

6 Petitioner inflicted great bodily injury, with the intent to do so,

7 upon Rebecca Thorpe; (2) during the commission of the burglary

8 Petitioner inflicted great bodily injury, with the intent to do so,

9 upon Columbus Thorpe and Rebecca Thorpe; and (3) Petitioner used a

10 firearm in the commission of the offenses (Respondent's Lodgment 1).

11 Petitioner received a sentence of seven years to life (Petition, p. 2;

12 Respondent's Lodgment 5, p. 0024).

13

14      On June 15, 2006, Petitioner appeared before the California Board

15 of Parole Hearings (BPH) for a seventeenth subsequent parole

16 consideration hearing (Petition, p. 2; Respondent's Lodgment 5).[1]  The

17 BPH denied parole for one year.

18

19      Petitioner filed a habeas corpus petition in the California

20 Supreme Court challenging the parole denial (Respondent's Lodgment 6).

21 On May 23, 2007, the California Supreme Court denied the petition

22 without opinion (Respondent's Lodgment 7).

23 ///

24 ///

25 //

26

----

27      [1]    On July 1, 2005, the California Board of Prison Terms
was abolished and replaced by the California Board of Parole
28 Hearings.  See Cal. Penal Code § 5075(a).

1                **THE BPH'S HEARING AND DECISION**

2

3   **I.**    **The Hearing**

4

5      Petitioner appeared at the 2006 BPH hearing represented by

6   counsel.   The presiding commissioner read into the record the summary

7   of the crime from the BPH's Report of the prior 2005 hearing:

8

9         On August the 20th of 1973, inmate Deboes and co-

10        dependent [sic] Wilbur - and I'll spell the last name - A-M-

11        B-E-A-U went to the victim's residence to take a TV set.

12        Ambeau dropped the prisoner off and circled the block while

13        the prisoner - while the inmate went to the victim's door.

14        After conversation at the front door with the victim's 75-

15        year-old wife during which he [Petitioner] asked for her

16        phone number she unlocked the screen door to pass him her

17        phone number.   Prisoner jerked open the front door, pushed

18        her back in the living room and grabbed her throat.   He then

19        pulled a revolver from his waistband and pushed her into a

20        chair.   She screamed and he struck her in the head with the

21        gun - told her to shut up and keep her mouth quiet.   He then

22        asked her where her husband was to which she replied he was

23        sick in bed and asked that he not be hurt.   The inmate went

24        to the bedroom doorway and while Mr. Thorpe, who was the

25        victim - that's T-H-O-R-P-E - who was 73 years old at the

26        time attempted to get out of bed.   The inmate fired three

27        shots, striking him twice in the chest and once in the arm.

28        The inmate then returned to the front room and started

1    taking a black and white portable TV set and Mrs. Thorpe's
2    purse.  Police were called and both victims were taken to
3    St. Francis Hospital.  Mr. Thorpe's condition was critical -
4    Mrs. Thorpe's condition was critical and she was treated for
5    a skull fracture.  Her husband was also in critical
6    condition with gunshot wounds to the chest and arms.  He
7    subsequently died as a result of his wounds on September
8    8th, 1973.  And that information was taken from the
9    Probation Officer's Report, Pages Five through Nine. . . .

10
11   (Respondent's Lodgment 5, pp. 0036-0037).

12

13       The BPH reviewed Petitioner's criminal history.  Petitioner was
14   convicted of breaking and entering in Mississippi in 1954, as a
15   juvenile, and served 18 months in state prison (Respondent's Lodgment
16   5, pp. 0043-0044).  In 1958, Petitioner was convicted of assault and
17   battery with intent to kill in Mississippi and served four years in
18   prison (Respondent's Lodgment 5, p. 0044).  In 1960, Petitioner was
19   convicted of assault and battery in Mississippi and, after serving a
20   thirty-day jail term, was arrested for burglary and larceny and sent
21   back to state prison (Respondent's Lodgment 5, p. 0044).  Thereafter,
22   Petitioner moved to Los Angeles where, in 1965, Petitioner was
23   convicted of second degree burglary and served a four-year prison term
24   (Respondent's Lodgment 5, p. 0045).  In 1967, Petitioner was convicted
25   of possession of stolen property (Respondent's Lodgment 5, pp. 0045-
26   0046).  The Probation Officer's Report indicated that, in 1973, after
27   Petitioner committed the Thorpe offenses, and while Petitioner was
28   still at large, Petitioner and Ambeau entered a bar in Duarte,

4

California, forced the barmaid and eight other people into a storage

room, forced the barmaid to give Petitioner and Ambeau money from the

cash register, forced the barmaid to commit oral copulation with

Ambeau, shot another woman in the shoulder, and struck and robbed

other victims (Respondent's Lodgment 3, pp. 0012-0013). The Probation

Officer's Report also showed that, following this incident, Petitioner

fled to Louisiana, and eventually was extradicted and returned to

Los Angeles (Respondent's Lodgment 3, p. 0013).


At the time of the challenged BPH hearing, Petitioner had the

lowest classification score an inmate could obtain (Respondent's

Lodgment 5, p. 0048). Petitioner had received six disciplinary

violations, the last one in November of 1989 (Respondent's Lodgment 5,

p. 0048). Petitioner had received a number of "CDC 128As,"[2] both

positive and negative, the last one in 2002 for disobeying a direct

order (Respondent's Lodgment 5, p. 0048-49, 0061-0062). Petitioner

had received excellent work reports in his former job as a

disciplinary clerk, and was on the waiting list for a job as a support

services clerk or PIA (Prison Industry Authority) laundry worker[3]

(Respondent's Lodgment 5, pp. 0049-0050).

---

[2]     Such documents, also called "chronos," are placed in an
inmate's file but ordinarily do not form the basis for ·
disciplinary action. See Freitag v. Ayers, 468 F.3d 528, 533
(9th Cir. 2006), cert. denied, 127 S. Ct. 1918 (2007).

[3]     The Prison Industry Authority, or "PIA," is an agency
within the Department of Corrections and Rehabilitation which,
among other things, operates work programs for prisoners. See
Cal. Penal Code §§ 2800-2801; see generally Burleson v. State of
Calif., 83 F.3d 311, 312-13 (9th Cir. 1996) (describing origins
of PIA).

1    Asked whether he was engaged in any self-help activities,

2  Petitioner stated that he was on the waiting list for a Youth

3  Diversion Program, but that there were exceptionally long waiting

4  lists for such programs (Respondent's Lodgment 5, p. 0050).  A 2004

5  psychological evaluation opined that Petitioner had "mellowed over the

6  years" and that Petitioner's potential for violence had "drastically

7  decreased" (Respondent's Lodgment 5, p. 0053).  The psychologist also

8  opined that Petitioner had developed "good insight" into the things

9  that affected his anger and violence in the past (Respondent's

10  Lodgment 5, p. 0053).  The psychologist noted that Petitioner appeared

11  remorseful and was trying to make a contribution to society, and that

12  Petitioner's plans on parole seemed satisfactory (Respondent's

13  Lodgment 5, pp. 0053-0054).  The psychologist concluded that

14  Petitioner no longer represented a danger to society and recommended

15  that Petitioner "continue in the same positive way and remain

16  disciplinary-free until such time as the Board sets a date"

17  (Respondent's Lodgment 5, p. 0054).  An earlier 2001 psychologist's

18  report also apparently was favorable (Respondent's Lodgment 5,

19  pp. 0064-65).

20

21    A deputy commissioner indicated that he had reviewed Petitioner's

22  parole plans as described in a 2005 BPH report, and that the 2005

23  Report stated that Petitioner's Central File contained a letter from

24  Petitioner's daughter, dated May 2004, in which Petitioner's daughter

25  offered Petitioner a residence and support (Respondent's Lodgment 5,

26  p. 0055).  Petitioner said the letter was still valid, and explained

27  that he had failed to have his daughter write a more recent letter

28  because Petitioner had been "moving around and various things [were]

1   going on in the institution" (Respondent's Lodgment 5, pp. 0055,

2   0057).   The 2005 Report also referenced a letter of support from

3   Petitioner's sister, but Petitioner indicated the sister was now

4   deceased (Respondent's Lodgment 5, p. 0055).

5

6       Petitioner was 68 years old and suffered from degenerative disc

7   disease and sciatica (Respondent's Lodgment 5, pp. 0027, 0056, 0060-

8   0061).   Petitioner explained his criminal history as the product of

9   rejection from the man Petitioner believed was his father, but who

10  really was his uncle (Respondent's Lodgment 5, pp. 0067-0069).

11  Petitioner said that the therapy he received in prison helped

12  Petitioner to begin to heal himself, that he no longer was the person

13  he had been, and that he was deeply sorry for what he had done

14  (Respondent's Lodgment 5, pp. 69-70).

15

16  II.   **The BPH's Decision**

17

18      The BPH deemed Petitioner unsuitable for parole and denied parole

19  for one year.   The BPH stated that the commitment offense was

20  "especially cruel and calculated," and that the motive for the offense

21  was "very trivial" in relationship to the offense (Respondent's

22  Lodgment 5, pp. 0072-0073).   The BPH noted Petitioner's record of

23  assaultive behavior and failure to profit from previous attempts to

24  correct his criminality during Petitioner's four prior prison terms

25  (Respondent's Lodgment 5, p. 0073).   The BPH also noted Petitioner's

26  unstable social history and prior criminal record (Respondent's

27  Lodgment 5, p. 0073).   The BPH commended Petitioner for his positive

28  programming and disciplinary record, but indicated that Petitioner had

7

not developed adequate parole plans, noting that there had been no letter of support from Petitioner's daughter for over two years (Respondent's Lodgment 5, p. 0074). The BPH also observed that there was no indication Petitioner's daughter still lived at the same address and still wanted Petitioner to live with her (Respondent's Lodgment 5, p. 0074). The BPH recommended that, if Petitioner's daughter no longer was willing to provide Petitioner with housing, Petitioner should investigate assisted living facilities, so that he would have a place to live should he be granted parole in the future (Respondent's Lodgment 5, pp. 0074-75). The BPH also indicated Petitioner should contact the Social Security Administration to find out what kind of benefits he could receive, because his income would be important information at the next parole hearing (Respondent's Lodgment 5, p. 0077).

## PETITIONER'S CONTENTIONS

Petitioner contends:

1. The BPH allegedly violated Petitioner's Due Process rights because its parole denial assertedly was unsupported by sufficient evidence and was based on the allegedly unchanging factors of the commitment offense and Petitioner's prior criminality (Petition, Ground One);

2. The BPH allegedly violated Due Process, Equal Protection and the Ex Post Facto Clause by applying determinate sentencing standards to Petitioner, who was sentenced under an indeterminate sentencing

scheme (Petition, Ground Two);

   3.   The BPH allegedly denied Petitioner parole pursuant to an asserted "no-parole" policy for those convicted of murder (Traverse, pp. 2-3); and

   4.   The alleged professional bias of BPH members and victims' rights advocates assertedly denied Petitioner a fair hearing (Traverse, pp. 3-4).

                        **STANDARD OF REVIEW**

   A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

   "Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63

                                9

(2003).  A state court's decision is "contrary to" clearly established
Federal law if: (1) it applies a rule that contradicts governing
Supreme Court law; or (2) it "confronts a set of facts. . . materially
indistinguishable" from a decision of the Supreme Court but reaches a
different result.  See Early v. Packer, 537 U.S. at 8 (citation
omitted); Williams v. Taylor, 529 U.S. at 405-06.

        Under the "unreasonable application prong" of section 2254(d)(1),
a federal court may grant habeas relief "based on the application of a
governing legal principle to a set of facts different from those of
the case in which the principle was announced."  Lockyer v. Andrade,
538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537
U.S. at 24-26 (state court decision "involves an unreasonable
application" of clearly established federal law if it identifies the
correct governing Supreme Court law but unreasonably applies the law
to the facts).

        A state court's decision "involves an unreasonable application of
[Supreme Court] precedent if the state court either unreasonably
extends a legal principle from [Supreme Court] precedent to a new
context where it should not apply, or unreasonably refuses to extend
that principle to a new context where it should apply."  Williams v.
Taylor, 529 U.S. at 407 (citation omitted).

        "In order for a federal court to find a state court's application
of [Supreme Court] precedent 'unreasonable,' the state court's
decision must have been more than incorrect or erroneous."  Wiggins v.
Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

1   court's application must have been 'objectively unreasonable.'" <u>Id.</u>

2   at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062,

3   1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003).

4

5      In applying these standards, this Court looks to the last

6   reasoned state court decision. <u>See</u> <u>Franklin v. Johnson</u>, 290 F.3d

7   1223, 1233 n.3 (9th Cir. 2002). Where, as here, no such reasoned

8   opinion exists, as where a state court rejected a claim in an

9   unreasoned order, this Court must conduct an independent review to

10   determine whether the decisions were contrary to, or involved an

11   unreasonable application of, "clearly established" Supreme Court

12   precedent. <u>See</u> <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

13

14                   **DISCUSSION**

15

16   **I.    Governing Legal Standards**

17

18      "There is no constitutional or inherent right of a convicted

19   person to be conditionally released before the expiration of a

20   valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal and</u>

21   <u>Correctional Complex</u>, 442 U.S. 1, 7 (1979) ("<u>Greenholtz</u>"). In some

22   instances, however, states may confer a liberty interest in parole

23   under state law. <u>Id.</u> at 12. Section 3041(b) of the California Penal

24   Code provides, in pertinent part:

25

26        The panel or board shall set a release date unless it

27        determines that the gravity of the current convicted offense

28        or offenses, or the timing and gravity of current or past

1  convicted offense or offenses, is such that consideration of

2  the public safety requires a more lengthy period of

3  incarceration for this individual, and that a parole date,

4  therefore, cannot be fixed at this meeting.

5

6      The Ninth Circuit has held that section 3041(b) confers a

7  constitutionally protected liberty interest in parole.  Irons v.

8  Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif.

9  Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

10  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) ("Biggs").

11

12      Due Process requires that there exist "some evidence" to support

13  a parole decision.  Irons, 505 F.3d at 850-51 ("At the time that

14  Irons' state habeas petition [challenging a 2001 denial of parole] was

15  before the state courts, the Supreme Court had clearly established

16  that a parole board's decision deprives a prisoner of due process . .

17  . if the board's decision is not supported by 'some evidence in the

18  record.'"); Sass, 461 F.3d at 1128 ("some evidence" standard is

19  "clearly established in the parole context"); Powell v. Gomez, 33 F.3d

20  39, 40 (9th Cir. 1994); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th

21  Cir. 1992); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th

22  Cir. 1987) (citing Superintendent, Massachusetts Correctional

23  Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985)).[4]  "To

24  determine whether the some evidence standard is met 'does not require

25  _____

26      [4]   Due Process also requires that the state provide
   a prisoner with an opportunity to be heard and, if parole is
27  denied, a statement of reasons for the denial.  Greenholtz,
   442 U.S. at 16; Bermudez v. Duenas, 936 F.2d 1064, 1066 (9th
28  Cir. 1991).  Petitioner received these procedural safeguards.

12

examination of the entire record, independent assessment of the

credibility of witnesses, or weighing of the evidence.'"  Sass, 461

F.3d at 1128 (quoting Superintendent, Massachusetts Correctional

Institution, Walpole v. Hill, 472 U.S. at 455-56).  The "some

evidence" standard is "minimal," and "'the relevant question is

whether there is any evidence in the record that could support the

conclusion reached by the [Board].'"  Sass, 461 F.3d at 1128 (quoting

Superintendent, Massachusetts Correctional Institution, Walpole v.

Hill, 472 U.S. at 455-56; emphasis added).[5]


    State authorities' discretion in parole matters is "great" and

"involves the deliberate assessment of a wide variety of

individualized factors on a case-by-case basis, and the striking of a

_____

[5]    Both parties argue that the Court should not apply the
"some evidence" standard.  Respondent's contention that the "some
evidence" standard does not apply is without merit.  See Irons,
505 F.3d at 851; Sass, 461 F.3d at 1128.  None of the Supreme
Court cases cited by Respondent "undercut the theory or reasoning
underlying the prior circuit precedent in such a way that the
cases are clearly irreconcilable."  See generally Miller v.
Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  Indeed, the
Ninth Circuit recently rejected the same argument in Willis v.
Kane, 2007 WL 4197494 (9th Cir. Nov. 19, 2007) (not published in
Federal Reporter) (applying "some evidence" standard despite
State's argument that, under Carey v. Musladin, 127 S. Ct. 649
(2006) and Schriro v. Landrigan, 127 S. Ct. 1933 (2007), no
clearly established Supreme Court law authorized use of "some
evidence" standard, set forth in Respondent-
Appellant's Opening Brief, filed July 24, 2007 in Willis v. Kane,
9th Cir. case number 07-15893, reproduced at 2007 WL 2426345).
Therefore, this Court remains bound by Irons and Sass.

    Petitioner's argument that the "substantial evidence"
standard applies rather than the "some evidence" standard also
lacks merit.  See Irons, 505 F.3d at 850-51; Sass, 461 F.3d at
1128; Mejia v. Kane, 2007 WL 30595, at *5 n.1 (N.D. Cal. Jan. 3,
2007.

1   balance between the interests of the inmate and the public."   In re

2   Powell, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

3   (internal quotations and citation omitted); see also Biggs, 334 F.3d

4   at 915 (California law allows the state authorities "to consider a

5   myriad of factors when weighing the decision of granting or denying

6   parole"); Glauner v. Miller, 184 F.3d 1053, 1055 (9th Cir. 1999)

7   (state authorities have "broad discretion" to determine whether "the

8   necessary [statutory] prerequisites are met") (quoting Board of

9   Pardons v. Allen, 482 U.S. 369, 376 (1987)).

10

11      Under applicable state regulations, in determining suitability

12   for parole in cases such as Petitioner's, the BPH may consider, inter

13   alia, "the circumstances of the prisoner's: social history; past and

14   present mental state; past criminal history, including involvement in

15   other criminal misconduct which is reliably documented; the base and

16   other commitment offenses, including behavior before, during and after

17   the crime; past and present attitude toward the crime; any conditions

18   of treatment or control, including the use of special conditions under

19   which the prisoner may safely be released to the community; and any

20   other information which bears on the prisoner's suitability for

21   release."   Cal. Code Regs. tit. 15, § 2281(b) (2007).[6]

22   ///

23   ///

24   ///

25

26 ────────────────

27     [6]   The provisions of section 2281 of Title 15 of the
California Code of Regulations apply because Petitioner committed

28   the crime of murder prior to November 7, 1978.  See Cal. Code
Regs, tit. 15, § 2292.

1   Circumstances tending to indicate unsuitability include:

2

3   (1) Commitment Offense.  The prisoner committed the offense

4   in an especially heinous, atrocious or cruel manner.  The

5   factors to be considered include:

6

7   (A) Multiple victims were attacked, injured or killed in the

8   same or separate incidents.

9

10  (B) The offense was carried out in a dispassionate and

11  calculated manner, such as an execution-style murder.

12

13  (C) The victim was abused, defiled or mutilated during or

14  after the offense.

15

16  (D) The offense was carried out in a manner which

17  demonstrates an exceptionally callous disregard for human

18  suffering.

19

20  (E) The motive for the crime is inexplicable or very trivial

21  in relation to the offense.

22

23  (2) Previous Record of Violence.  The prisoner on previous

24  occasions inflicted or attempted to inflict serious injury

25  on a victim, particularly if the prisoner demonstrated

26  serious assaultive behavior at an early age.

27  ///

28  ///

15

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs., tit. 15, § 2281(c).

Circumstances tending to indicate suitability include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given

1    indications that he understands the nature and magnitude of
2    the offense.
3
4    (4) Motivation for Crime.  The prisoner committed his crime
5    as the result of significant stress in his life, especially
6    if the stress had built over a long period of time.
7
8    (5) Battered Woman Syndrome.  At the time of the commission
9    of the crime, the prisoner suffered from Battered Woman
10   Syndrome, as defined in section 2000(b), and it appears the
11   criminal behavior was the result of that victimization.
12
13   (6) Lack of Criminal History.  The prisoner lacks any
14   significant history of violent crime.
15
16   (7) Age.  The prisoner's present age reduces the probability
17   of recidivism.
18
19   (8) Understanding and Plans for Future.  The prisoner has
20   made realistic plans for release or has developed marketable
21   skills that can be put to use upon release.
22
23   (9) Institutional Behavior.  Institutional activities
24   indicate an enhanced ability to function within the law upon
25   release.
26
27   Cal. Code Regs., tit. 15, § 2281(d).
28   ///

1    II.   **Petitioner's Challenge to the Sufficiency of the Evidence Does**
2          **Not Merit Habeas Relief.**

3

4          Petitioner challenges the sufficiency of the evidence to support
5    the BPH's denial of parole.   Contrary to Petitioner's contention,
6    "some evidence" supported the BPH's decision, including the nature of
7    the commitment offense (gaining entry by ruse to the home of an
8    elderly couple, assaulting the woman, and firing three shots at her
9    infirm husband as he attempted to rise from bed, killing him), the
10   triviality of the motive for that offense (to steal the couple's
11   portable television set), Petitioner's lengthy criminal history, and
12   Petitioner's inadequate parole plans.   See Wauls v. Muntz, 2007 WL
13   4165239, at *1 (9th Cir. Nov. 26, 2007) (not published in Federal
14   Reporter) (nature of commitment offense, criminal history, and
15   disciplinary history sufficient);[7] Willis v. Kane, 2007 WL 4197494, at
16   *1 (9th Cir. Nov. 19, 2007) (not published in Federal Reporter)
17   (gravity of commitment offense sufficient); Jackson v. Carey, 2007 WL
18   2088279, at *1 (9th Cir. July 19, 2007) (not published in Federal
19   Reporter) (gravity of commitment offense, inadequate parole plans and
20   failure to participate adequately in self-help programs sufficient);
21   Lang v. Kane, 2007 WL 1729648, at *1 (9th Cir. June 15, 2007) (not
22   published in Federal Reporter) (lack of adequate parole plans
23   sufficient); Sass, 461 F.3d at 1129 (gravity of petitioner's convicted
24   offenses coupled with his prior offenses sufficient); Rosas v.
25   Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (circumstances of

26   _____

27        [7]   The Court may cite unpublished Ninth Circuit opinions
     issued on or after January 1, 2007.   See U.S. Ct. App. 9th Cir.
28   Rule 36-3(b); Fed. R. App. P. 32.1(a).

1    commitment offense along with psychiatric reports showing petitioner

2    had failed to complete necessary programming while in prison

3    sufficient); Biggs, 334 F.3d at 916 (gravity of the commitment offense

4    sufficient); Withers v. Finn, 2007 WL 2729078, at *7 (E.D. Cal.

5    Sept. 18, 2007) (lack of adequate parole plans sufficient), adopted,

6    2007 WL 3293378 (E.D. Cal. Nov. 5, 2007); Burnight v. Carey, 2007 WL

7    3231583, at *3 & n.1 (E.D. Cal. Oct. 30, 2007) (nature of commitment

8    offense and triviality of motive sufficient).

9

10       To the extent Petitioner contends the BPH could not consider the

11   gravity of Petitioner's commitment offense in determining suitability,

12   such a contention lacks merit.  See Sass, 461 F.3d at 1129 (gravity of

13   the commitment offenses, coupled with prior criminal history,

14   supported the denial of parole); Biggs, 334 F.3d at 915 (Board "can

15   consider all relevant information" in deciding whether to grant

16   parole, including gravity of the commitment offense).

17

18       Petitioner appears to argue that the BPH should have weighed more

19   heavily arguably positive factors.  This Court cannot re-weigh the

20   factors supporting parole suitability and the factors supporting

21   parole unsuitability.  See Powell v. Gomez, 33 F.3d at 42; McElwee v.

22   Hamlet, 2003 WL 21556945 at *3 (N.D. Cal. July 3, 2003); see also

23   Crawley v. Knowles, 235 Fed. App'x 563, 564 (9th Cir. 2007) ("The

24   'some evidence' standard does not allow us to entertain Crawley's

25   contentions regarding how the Board evaluated the evidence it had

26   before it when it made its suitability determination. [citation]".).

27   ///

28   ///

1    Moreover, even if the BPH made some insupportable findings, the

2    Court nevertheless must deny habeas relief where, as here, there

3    exists "some evidence" supporting the BPH's findings of unsuitability.

4    See Biggs, 334 F.3d at 916.[8]

5

6    In sum, the nature of the commitment offense, the triviality of

7    the motive, Petitioner's criminal history, and Petitioner's inadequate

8    parole plans provided "some evidence" to support the BPH's

9    unsuitability finding.  Therefore, the California Supreme Court's

10   rejection of Petitioner's challenge to the sufficiency of the evidence

11   was not contrary to, or an objectively unreasonable application of,

12   any clearly established Federal law as determined by the United States

13   Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

14   to habeas relief on his challenge to the sufficiency of the evidence.

15

16   Petitioner also contends that the BPH continually has denied

17   Petitioner parole based on the immutable factors of the commitment

18   offense and Petitioner's prior criminality, citing, inter alia, Biggs

19   (Petition, pp. 5, 5(f)).  In Biggs, the Ninth Circuit stated:

20

21       Over time, however, should Biggs continue to demonstrate

22       exemplary behavior and evidence of rehabilitation, denying

23

_____

24       [8]    To the extent Petitioner contends the BPH violated
25   state law or regulations, Petitioner is not entitled to habeas
     relief.  A federal court may grant habeas corpus relief "only on
26   the ground that [the petitioner] is in custody in violation of
     the Constitution or laws or treaties of the United States."  28
27   U.S.C. § 2254(a).  Mere errors in the application of state law
     are not cognizable on habeas corpus.  Estelle v. McGuire, 502
28   U.S. 62, 67-68 (1991).

1    him a parole date simply because of the nature of Biggs'

2    offense and prior conduct <u>would raise serious questions</u>

3    involving his liberty interest in parole. . . .

4

5         . . . A <u>continued</u> reliance in the future on an

6    unchanging factor, the circumstance of the offense and

7    conduct prior to imprisonment, runs contrary to the

8    rehabilitative goals espoused by the prison system and <u>could</u>

9    <u>result</u> in a due process violation.

10

11   <u>Biggs</u>, 334 F.3d at 916-17 (emphasis added).

12

13       In Petitioner's case, the BPH did not rely solely on the nature

14   of the commitment offense to deny parole.  Therefore, the <u>Biggs</u> dicta

15   would be inapplicable even if it were otherwise persuasive or

16   authoritative.  <u>See</u> <u>Withers v. Finn</u>, 2007 WL 2729078, at *6

17   (distinguishing <u>Biggs</u> where denial of parole additionally was based on

18   petitioner's inadequate parole plans, and thus was not based *solely*

19   *on immutable factors*"); <u>Rose v. Kane</u>, 2006 WL 3251735, at *11 (N.D.

20   Cal. Nov. 2, 2006) (<u>Biggs</u> dicta inapplicable where the Board did not

21   base denial solely on gravity of commitment offense, but also relied

22   on fact that petitioner needed more self-help and therapy).

23

24       Additionally, no subsequent Ninth Circuit case has applied this

25   <u>Biggs</u> dicta to grant habeas relief.  In <u>Sass</u>, the Ninth Circuit held

26   that the gravity of the commitment offense (second degree murder) and

27   the evidence of Sass' prior offenses demonstrated the requisite "some

28   evidence" to support the Board's denial of parole.  <u>Sass</u>, 461 F.3d at

1129.   Acknowledging the _Biggs_ dicta, the _Sass_ Court indicated nevertheless that it was not the Court's function "to speculate about how future parole hearings should proceed." _Id._

In _Irons_, the Board deemed the petitioner, a second degree murderer, unsuitable for parole despite his exemplary behavior in prison.   On federal habeas, Irons argued, _inter alia_, that under the _Biggs_ dicta the Board had violated Due Process by relying repeatedly on the nature of the commitment offense to deny parole.   The district court agreed.   However, relying on _Sass_, the Ninth Circuit rejected this argument.   _Irons v. Carey_, 505 F.3d at 853-54.   The Court observed, _inter alia_, that the crime in _Sass_ was less callous than that in _Irons_, and that the petitioners in _Biggs_, _Sass_ and _Irons_ had not served the minimum term to which they had been sentenced at the time of the Board's denial of parole.   _Id._ at 853.   However, the Court carefully limited its holding to the "particular circumstances" of the offenses in _Biggs_, _Sass_ and _Irons_.   _Irons v. Carey_, 505 F.3d at 853-54 ("All we held in [_Biggs_ and _Sass_], and all we hold today, . . . is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms."); _see_ _Biggs v. Schwarzenegger_, 2007 WL 1140721, at *3 n.2 (E.D. Cal. Apr. 17, 2007) ("_Irons_ did not decide that reliance on unchanging factors after the minimum term had been served was unlawful.   We simply know that 'maybe' that will be the case.").

///

///

///

22

1  "clearly established" Supreme Court law.[10]  Section 2254(d)(1)'s

2  reference to "clearly established federal law" "refers to holdings, as

3  opposed to the dicta, of [Supreme Court] decisions." Williams v.

4  Taylor, 529 U.S. 362, 365 (2000).  The statements from Biggs quoted

5  above are the dicta of a Court of Appeals, not the Supreme Court.

6  Indeed, in Culverson v. Davison, 2007 WL 1663682 (9th Cir. June 8,

7  2007), the Ninth Circuit expressly ruled that "[t]here is no 'clearly

8  established federal law as determined by the Supreme Court of the

9  United States' that limits the number of times a parole board may deny

10  parole to a murderer based on the brutality and viciousness of the

11  commitment offense." Id. at *1 (footnotes omitted).  The Court ruled

12  that "[t]he dicta in Ninth Circuit cases like [Biggs] are not holdings

13  of the Supreme Court, as required by Carey v. Musladin, 549 U.S. _____,

14  at *5-7 [127 S. Ct. 649] (2006), and Shriro [sic] v. Landrigan, ___

15  U.S. ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127 S. Ct. 1933

16  (2007)]." Id.; see also Fernandez v. Kane, 2006 WL 3041083, at *3

17  (N.D. Cal. Oct. 24, 2006) (Biggs dicta not clearly established federal

18  law as set forth by the Supreme Court).  Therefore, any claim based on

19  the Biggs dicta lacks merit.

20  ///

21  ///

22  ///

23  ────────────────────

24  [10]    Indeed, one might conclude from Sass, Irons and Kunkler
    that there is no clearly established Ninth Circuit law in this

25  area (much less any clearly established Supreme Court law).  See
    Biggs v. Schwarzenegger, 2007 WL 1140721, at *3-4 (discussing

26  lack of guiding standards in Sass and Irons); see also Kleve v.
    Kane, 2007 WL 879069, at *6 (N.D. Cal. Mar. 21, 2007) (noting

27  that the Ninth Circuit has not specified the number of denials or
    the length of time served beyond the minimum sentence that might

28  trigger a Due Process violation).

                                24

III. **Petitioner Is Not Entitled to Habeas Relief on His Claim That the BPH Allegedly Improperly Applied Determinate Sentencing Law Standards of Parole Review.**

Petitioner was sentenced in 1975 under California's Indeterminate Sentencing Law ("ISL").  In 1977, the California Legislature repealed the Indeterminate Sentencing Law ("ISL") and replaced it with the Determinate Sentencing Law ("DSL"), California Penal Code section 1170 et seq.  See Connor v. Estelle, 981 F.2d 1032, 1041 (9th Cir. 1992); Sellars v. Procunier, 641 F.2d 1295, 1297 n.1 (9th Cir.), cert. denied, 454 U.S. 1102 (1981); People v. Jefferson, 21 Cal. 4th 86, 95, 86 Cal. Rptr. 2d 893, 899, 980 P.2d 441 (1999).

Petitioner contends the BPH violated the Ex Post Facto Clause, Due Process and Equal Protection by using DSL standards in determining Petitioner's suitability for parole.  These contentions lack merit.

In analyzing an Ex Post Facto claim, the "controlling inquiry" is whether retroactive application of a change in state law creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner v. Jones, 529 U.S. 244, 259 (2000) (citation and internal quotations omitted); Scott v. Baldwin, 225 F.3d 1020, 1022 (9th Cir. 2000).  The focus is not on whether a legislative change produces "some ambiguous sort of 'disadvantage,'" but rather "on whether any such change increases the penalty by which a crime is punishable." Garner v. Jones, 529 U.S. at 255 (quoting California Dep't of Corrections v. Morales, 514 U.S. 499, 506-07 n.3 (1997); internal quotations and ellipses omitted).  A petitioner may show an

Ex Post Facto violation in two ways.  First, the petitioner may show that application of the new rule "by its own terms [creates] a significant risk" of increasing the punishment for the crime.  <u>Garner v. Jones</u>, 529 U.S. at 255; <u>see also</u> <u>Scott v. Baldwin</u>, 225 F.3d at 1022 n.5.  Second, when the new rule does not by its own terms show such a significant risk, the petitioner "must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with continuing discretion, that the application will result in a longer period of incarceration than under the earlier rule."  <u>Garner v. Jones</u>, 529 U.S. at 255; <u>see</u> <u>Scott v. Baldwin</u>, 225 F.3d at 1022 n.5.

Petitioner has made neither showing.  The Ninth Circuit, district courts within the Ninth Circuit, and California state courts have all rejected similar Ex Post Facto arguments.  These courts reason that the enactment of the DSL did not alter the relevant criteria for determining parole suitability under the ISL, and that, therefore, the application of DSL standards to prisoners sentenced under the ISL does not violate the Ex Post Facto Clause or Equal Protection.  <u>See</u> <u>Connor v. Estelle</u>, 981 F.2d 1032, 1033-34 (9th Cir. 1992); <u>see also</u> <u>Jones v. Calif. Bd. of Prison Terms</u>, 239 Fed. App'x 372 (9th Cir. 2007) (petitioner's constitutional challenges to application of DSL standards to parole proceedings "are foreclosed by this court's decision in <u>Connor v. Estelle</u>"); <u>Moreno v. Mendoza-Powers</u>, 2007 WL 4170720, at *7 (E.D. Cal. Nov. 19, 2007); <u>Sesma v. Hernandez</u>, 2007 WL 3243853, at *6 (S.D. Cal. Oct. 30, 2007); <u>Oliver v. Stokes</u>, 2007 WL 1593248, at *3 (N.D. Cal. June 1, 2007; <u>In re Duarte</u>, 143 Cal. App. 3d 943, 951, 193 Cal. Rptr. 176 (1983); <u>In re Seabock</u>, 140 Cal. App. 3d

29, 40, 189 Cal. Rptr. 310 (1983).[11]  Petitioner has not shown that

application of DSL standards to Petitioner "by [their] own terms"

resulted in any significant risk of an increase in Petitioner's

punishment.  Nor has Petitioner shown that, as applied to Petitioner,

the DSL standards resulted in any significant risk of an increase in

Petitioner's punishment.  See D'Agostin v. Hernandez, 2007 WL 2481461,

at *4 (S.D. Cal. Aug. 29, 2007) (rejecting claim that application of

DSL standards violated Ex Post Facto Clause; because criteria for

release under ISL and DSL standards were similar, "Petitioner . . .

cannot show with any assurance, or indeed with any degree of

probability, he would have received parole under the old system.

[citation].  Under Garner [v. Jones], Petitioner cannot show an *ex*

*post facto* violation.").


        For similar reasons, Petitioner's Due Process and Equal

Protection claims also fail.  See Connor v. Estelle, 981 F.2d at 1034-

35; Jones v. Calif. Bd. of Prison Terms, 2007 WL 426738, at *2 (E.D.

Cal. Feb. 7, 2007), adopted, 2007 WL 935012 (E.D. Cal. Mar. 27, 2007),

aff'd, 239 Fed. App'x 372 (9th Cir. 2007).

///

///

---

        [11]    Petitioner's reliance on Fletcher v. Reilly, 433 F.3d
867, 369 U.S. App. D.C. 100 (D.C. Cir. 2006), is unavailing.  In
Fletcher, the petition challenged the retroactive application of
federal parole regulations which the court found were
"substantially different" from the regulations applicable at the
time of the petitioner's 2000 reparole hearing.  Id. at 877-78.
In the present case, the DSL standards for parole suitability
applied to Petitioner did not differ substantially from the
earlier ISL standards.  See Connor v. Estelle, 981 F.2d at 1033-
34.

1      Therefore, the California Supreme Court's rejection of

2 Petitioner's Ex Post Facto and Equal Protection claims was not

3 contrary to, or an objectively unreasonable application of, any

4 clearly established federal law as determined by the United States

5 Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled

6 to habeas relief on these claims.

7

8 **IV.**    <u>**Petitioner's Claim that the BPH Violated the Constitution by**</u>

9      <u>**Denying Petitioner Parole Pursuant to an Alleged "No-Parole"**</u>

10      <u>**Policy Does Not Merit Habeas Relief.**</u>

11

12      Petitioner's claim that the BPH denied Petitioner parole based on

13 a purported "No Parole Policy" for murderers lacks merit (Petition,

14 p. 5(c); Traverse, pp. 2-3).  Petitioner has presented no evidence

15 that, at the time of his June 15, 2006 hearing, the BPH had any "no

16 parole" policy for convicted murderers.  <u>See</u> <u>Smith v. Finn</u>, 2007 WL

17 214597, at *9 (E.D. Cal. Jan. 25, 2007), <u>adopted</u>, 2007 WL 3151673

18 (E.D. Cal. Oct. 26, 2007) (rejecting claim that BPH's denial of parole

19 in April of 2005 was the product of a "no parole policy"; "there is no

20 indication that any parole eligibility hearings during Governor

21 Schwarzenegger's tenure have been or would 'be affected by a

22 historical "no parole" policy assertedly instituted by two previous

23 governors'") (citation omitted); <u>Rio v. Bd. of Prison Terms</u>

24 <u>Commissioners</u>, 2006 WL 3783575, at *9 (N.D. Cal. Dec. 21, 2006)

25 (rejecting claim that Board denied parole in 2005 pursuant to a "no

26 parole" policy; "the former governor's policies and statements cannot

27 be attributed to his successor").  Petitioner's conclusory allegations

28 concerning an alleged "no parole" policy fail to state a claim for

1    habeas relief.  <u>See</u> <u>Lancaster v. Bd. of Prison Terms</u>, 2007 WL 1725696,

2    at *1 (9th Cir. June 13, 2007) (not published in Federal Reporter)

3    (conclusory allegations that Board denied parole based on an alleged

4    "no parole" policy insufficient); <u>see generally</u> <u>Jones v. Gomez</u>, 66

5    F.3d 199, 204-05 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1143 (1996)

6    (conclusory allegations unsupported by a statement of specific facts

7    do not warrant habeas relief).

8

9         Rather, the record shows that the Board based its decision on an

10   individualized assessment of Petitioner's circumstances, and, as

11   discussed above, the record shows that "some evidence" supported the

12   Board's decision.  <u>See</u> <u>Northrop v. Ylst</u>, 2007 WL 2255219, at *12 (N.D.

13   Cal. Aug. 3, 2007) (rejecting claim that Board arbitrarily denied

14   parole pursuant to alleged "no parole" policy, where record showed

15   Board provided individual assessment of petitioner's suitability for

16   parole); <u>Kobe v. Kane</u>, 2007 WL 1462386, at *5 (N.D. Cal. May 18, 2007)

17   ("[e]ven if petitioner could show the existence of such a policy, the

18   transcript of the proceeding and the decision show that the Board

19   considered [p]etitioner's suitability on an individual basis and in

20   considerable detail"; "the decision was based on more than

21   [p]etitioner's commitment offense and his status as a convicted

22   murderer serving an indeterminate sentence").

23

24        Therefore, the California Supreme Court's rejection of

25   Petitioner's claims based on an alleged "no parole" policy was not

26   contrary to, or an objectively unreasonable application of, any

27   clearly established Federal law as determined by the United States

28   Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled

1 | to habeas relief on this claim.

2

3 | **V.    Petitioner's Claim That the BPH Denied Petitioner Parole As a**

4 | **Result of Alleged "Professional Bias" Does Not Warrant Habeas**

5 | **Relief.**

6

7 | Petitioner contends that, although state law assertedly requires

8 | the BPH to consist of a cross-section of the California populace,[12] in

9 | reality the BPH allegedly has been dominated by "ex-law enforcement,

10 | ex-corrections [officials] and Victims Rights Advocates" who

11 | assertedly harbor a "professional bias" allegedly rendering the BPH

12 | incapable of objective fairness (Traverse, pp. 3-4; original

13 | emphasis).[13]

14

15 | Petitioner's claim lacks merit. First, to the extent Petitioner

16 | asserts the composition of the BPH or the participation of victim's

17 | rights advocates allegedly violated state law, Petitioner is not

18 | entitled to habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68

19 | (1991); Butler v. Calderon, 1998 WL 387612, at *4 (N.D. Cal. July 6,

20 | 1998) (contention that composition of California Board of Prison Terms

21 | _____

22 | [12]    See Cal. Penal Code §5075 ("The selection of persons

23 | and their appointment by the Governor and confirmation by the
Senate [as BPH commissioners] shall reflect as nearly as possible

24 | a cross section of the racial, sexual, economic, and geographic
features of the population of the state.").

25

26 | [13]    Although it appears this claim may be unexhausted, for
the reasons discussed herein the claim is not colorable.  The
Court may deny an unexhausted claim on the merits which is not

27 | "colorable."  See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th
Cir. 2005), cert. denied, 546 U.S. 1172 (2006); 28 U.S.C. §

28 | 2254(b)(2).

 1 | did not comply with California Penal Code section 5075 stated no claim
 2 | for federal habeas relief).

 3 |

 4 |   Additionally, while a prisoner is entitled to have his or her
 5 | parole application considered by a "neutral and detached body" that is
 6 | "free from bias or prejudice," O'Bremski v. Maass, 915 F.2d 418, 422
 7 | (9th Cir. 1990), cert. denied, 498 U.S. 1096 (1991), administrative
 8 | adjudicators are presumed to act with honesty and integrity.  See
 9 | Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n, 426
10 | U.S. 482, 496-97 (1976); Withrow v. Larkin, 421 U.S. 35, 47 (1975).
11 | To overcome this presumption, a petitioner alleging bias "must show
12 | that the adjudicator has prejudged or reasonably appears to have
13 | prejudged, an issue." Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir.
14 | 1995) (internal quotations omitted).  A petitioner may make this
15 | showing in two ways.  First, "the proceedings and surrounding
16 | circumstances may demonstrate actual bias on the part of the
17 | adjudicator." Id.  Second, a petitioner may show that "the
18 | adjudicator's pecuniary or personal interest in the outcome of the
19 | proceedings . . . create[d] an appearance of partiality that violates
20 | due process. . . ." Id.  Here, Petitioner has made neither showing.
21 | See Lancaster v. Board of Prison Terms, 234 Fed. App'x 588, 589 (9th
22 | Cir. 2007) (rejecting claim that Board was composed of a high number
23 | of ex-law enforcement officials and hence was not representative of
24 | California populace, where petitioner made no showing of bias); Cook
25 | v. Sisto, 2007 WL 2726903, at *1 (E.D. Cal. Sept. 17, 2007) ("The mere
26 | fact that the 'cross-section of community' which petitioner desires
27 | has not evidently been the source of selection for parole
28 | commissioners does not implicate a federal constitutional claim for

1  biased decisionmakers."); <u>Scott v. Calderon</u>, 1998 WL 879681, at *4

2  (N.D. Cal. Dec. 9, 1998) (rejecting claim that Board of Prison Terms

3  panel was biased because the panel was comprised of "'ex-law

4  enforcement officers, officers, victims, and/or [persons] otherwise

5  associated with the capture and punishment of criminals'"); <u>see also</u>

6  <u>Vera v. Renico</u>, 2002 WL 551014, at *1-3 (E.D. Mich. Mar. 27, 2002)

7  (rejecting claim "that parole board members are biased against

8  prisoners based upon their criminal justice backgrounds and the fact

9  that they have 'dedicated their lives to sending citizens to prison

10 for violating the law'"); <u>Ragins v. Gilmore</u>, 48 F. Supp. 2d 566, 569-

11 70 (E.D. Va. May 6, 1999) ("The Constitution places no limitations on

12 who can serve as a member of a parole board based solely on the

13 background of the official. [citations]."); <u>United States ex rel.</u>

14 <u>Devine v. Fairman</u>, 537 F. Supp. 883, 885 (N.D. Ill. 1982)

15 ("petitioner's allegations related to the bias of the [parole] board

16 members with prior law enforcement experience do not rise to the level

17 of a due process violation"); <u>cf.</u> <u>Tinsley v. Borg</u>, 895 F.2d 520, 528

18 (9th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1091 (1991) ("we will not

19 presume bias merely because a juror works in law enforcement").

20 Therefore, Petitioner is not entitled to habeas relief on this claim.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:  December 20, 2007.


_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.